THIS ORDER IS APPROVED.

Dated: February 25, 2021

**Brenda Moody Whinery, Chief Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| In re: | Chapter 11 |
|---|---|
| DAVID K. CROWE and COLLEEN M. CROWE, | Case No. 4:19-bk-04406-BMW |
| Debtor(s). | **RULING AND ORDER REGARDING MOTION FOR RELIEF FROM AUTOMATIC STAY (Dkt. 144)** |

This matter is before the Court pursuant to the *Motion for Relief from Automatic Stay* ("Motion for Stay Relief") (Dkt. 144) filed by Turbine Powered Technology, LLC ("TPT") on September 3, 2019; the *Response to Motion for Relief from Automatic Stay* ("Response") (Dkt. 148) filed by David K. Crowe ("Crowe") and Colleen M. Crowe (collectively with David K. Crowe, the "Crowes") on September 17, 2019; the *Reply to Response to Motion for Relief from Automatic Stay* (Dkt. 158) filed by TPT on October 1, 2019; the *Supplemental Response to Motion for Relief from Automatic Stay (DE 144) and Motion to Abstain or Stay Adversary Proceeding (Adv. DE 10)* (Dkt. 214) filed by the Crowes on January 8, 2020; and all filings related thereto.

On January 14, 2021, the Court heard oral argument and took this matter under advisement. Based upon the pleadings, arguments of counsel, and entire record before the Court, the Court now issues its ruling.

**I.  Jurisdiction**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. No party has contested this Court's jurisdiction to rule on the Motion for Stay Relief.

## II. Facts & Procedural Background

In 2016, TPT commenced an action in the 16th Judicial District Court for the Parish of St. Mary in Louisiana against Crowe and eight others (the "Louisiana Action").[1] The complaint in the Louisiana Action contains counts against some and/or all of the named defendants for declaratory relief, breach of contract, bad faith breach of contract, intentional and/or negligent misrepresentation, detrimental reliance, fraud and fraud in the inducement, violation of the Louisiana Unfair Trade Practices Act and Consumer Protection Law, violation of the Louisiana Uniform Trade Secrets Act, tortious interference with business relationships, unjust enrichment, and breach of fiduciary duty. (Dkt. 148 at Ex. 1). The complaint also seeks injunctive relief against Crowe and others in the form of a temporary restraining order, a preliminary injunction, and ultimately, a permanent injunction. (Dkt. 148 at Ex. 1). The Crowes have asserted counterclaims and third-party claims in the Louisiana Action, alleging damages of not less than $100 million. (*See* Dkt. 83 at 7-8; Dkt. 134 at 15-16).

On April 12, 2019, the Crowes filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing this case and staying the Louisiana Action as to Crowe.

Pre-petition, the Crowes were represented by Meade Young, LLC ("Meade Young") in the Louisiana Action. (*See* Dkt. 28). On May 9, 2019, the Crowes filed an *Application for Approval of Employment of Meade Young, LLC as Special Counsel for Debtors in Possession* (the "Special Counsel Application") (Dkt. 28), in which application the Crowes asked the Court to authorize the employment of Meade Young to continue to represent them in the Louisiana Action on a contingency fee basis. The Court granted the Special Counsel Application, with approval of fees and costs to be subject to further Court order. (Dkt. 99). The Special Counsel

---

[1] The Louisiana Action, as filed, is case number 130379 pending before the 16th Judicial District Court for the District of Louisiana, Division F. The Louisiana Action has been removed to federal court and remanded back to the Louisiana state court on a number of occasions. As such, the Louisiana Action is associated with case numbers including 6:17-cv-00801-DDD-CBW, 6:19-cv-00475-TAD-CBW, and 6:20-cv-00986-MJJ-CBW in the U.S. District Court, Western District of Louisiana.

It is this Court's understanding that there is another action pending in the U.S. District Court, Western District of Louisiana, case number 6:17-cv-00386-RRS-CBW, which action was commenced by Crowe and others against TPT and others, and which action has been stayed. It is the Court's understanding that the claims alleged by Crowe in that action overlap with those involved in the Louisiana Action.

Application did not seek to limit the scope of Meade Young's employment, and the order approving the Special Counsel Application did not otherwise impose any limitations on the scope of Meade Young's employment to prosecute the claims asserted by the Crowes or defend against the claims asserted against Crowe in the Louisiana Action. The retention agreement between Meade Young and the Crowes was not disclosed to, or approved by, this Court, and at this time, Meade Young remains special counsel for the Crowes in the Louisiana Action.

On July 16, 2019, TPT filed a proof of claim in an amount "[n]ot less than $30,014,536.82" (the "TPT Claim"). (Proof of Claim 12-1). The proof of claim asserts that the basis for the TPT Claim is the claims asserted by TPT against Crowe in the Louisiana Action, other amounts awarded to TPT in the Louisiana Action, and potentially other litigation claims. (*See* Proof of Claim 12-1). The Crowes have objected to TPT's proof of claim. (Dkt. 176).

On July 22, 2019, TPT commenced an adversary proceeding against the Crowes, in which proceeding TPT seeks liquidation of the TPT Claim in an amount not less than $30,014,536.82, plus interest, attorneys' fees and other relief, and seeks a determination that the TPT Claim is nondischargeable pursuant to §§ 523(a)(2)(A), 523(a)(4), 523(a)(6), and 727(a)(4)[2] (the "Adversary"). (Adv. Dkt. 1).[3] In the Adversary complaint, TPT consents to the jurisdiction of this Court for purposes of the Adversary. (Adv. Dkt. 1). The Crowes generally deny the allegations set forth in the Adversary complaint. (Adv. Dkt. 2).

On August 14, 2019, the Crowes filed their *Amended Disclosure Statement in Support of Amended Chapter 11 Plan of Reorganization Dated August 14, 2019 Proposed by David K. Crowe and Colleen M. Crowe* (the "Disclosure Statement") (Dkt. 134). The Disclosure Statement and the *Amended Chapter 11 Plan of Reorganization Dated August 2, 2019 Proposed by David K. Crowe and Colleen M. Crowe* (the "Plan") (Dkt. 129) was approved by the Court. (Dkt. 140). The Crowes represent in the Disclosure Statement that they intend to pursue their claims in the Louisiana Action and related litigation post-confirmation and/or upon the granting of stay relief,

---

[2] Unless otherwise indicated, statutory references are to the Bankruptcy Code, title 11 of the United States Code.

[3] Citations to "Adv. Dkt." are citations to the docket in the adversary proceeding, case number 4:19-ap-00260-BMW.

although the Crowes have since indicated that they may choose not to "return to the fray" if stay relief is granted. (Dkt. 134 at 14-16; 1/14/2021 Hearing Tr. 31:6-14).

On September 3, 2019, TPT filed the Motion for Stay Relief, in which TPT moves the Court to grant stay relief to allow it to complete the litigation in the Louisiana Action.

On September 17, 2019, the Debtors filed the Response, in which they ask the Court to deny TPT's request for stay relief on the basis that the Louisiana Action overlaps with the Adversary, over which this Court has core jurisdiction, and on the basis that it is in the best interests of the estate and creditors to have the issues decided by this Court. The Crowes initially took the position that stay relief would put the bankruptcy case on hold indefinitely pending liquidation of the TPT Claim given the impact that liquidation of the TPT Claim would have on the administration of the bankruptcy case. It was the Crowes' position that liquidation or estimation of the TPT Claim would be required in order for them to pursue confirmation of their Plan.

On October 18, 2019, TPT filed a *Motion to: (1) Abstain or Alternatively, Stay Adversary Proceeding; and (2) to Continue Deadlines* (the "Motion to Abstain") (Adv. Dkt. 10), in which motion TPT asked the Court to permissively abstain from or stay the adjudication of the Adversary pending the adjudication of TPT's claims against Crowe in the Louisiana Action. The Crowes opposed the Motion to Abstain for many of the same reasons that the Crowes initially opposed the Motion for Stay Relief.

On October 24, 2019, the Court held a preliminary hearing on the Motion for Stay Relief, at which time the matter was deferred.

On November 13, 2019, the Crowes filed a *Motion for Partial Summary Judgment (Counts I-III)* (the "MPSJ") (Adv. Dkt. 18) in the Adversary, which motion had the potential to resolve, or at least significantly narrow, the issues before the Court pertaining to the TPT Claim and Adversary.

On February 20, 2020, the Court issued its *Ruling and Order Re: Motion to: (1) Abstain or Alternatively, Stay Adversary Proceeding; and (2) Continue Deadlines* (the "Abstention Ruling & Order") (Adv. Dkt. 52), in which the Court denied TPT's Motion to Abstain based

upon the status of the proceedings, particularly given the pending MPSJ, without prejudice to the Court determining whether the stay should be terminated or modified in the future.[4]

On July 31, 2020, the Court denied the Crowes' MPSJ on the basis that TPT had described what it asserts are the trade secrets at issue in the Adversary, which are the same trade secrets at issue in the Louisiana Action, with sufficient particularity to overcome the MPSJ. (Adv. Dkt. 132).

On November 12, 2020 and December 9, 2020, the Court held continued hearings on the Motion for Stay Relief, and on January 14, 2021, the Court heard oral argument. During oral argument, counsel for TPT clarified that at this time, TPT is requesting relief from the stay solely for the purpose of liquidating the TPT Claim. (1/14/2021 Hearing Tr. 13:24-14:17, 26:24-27:6).

At this juncture the entirety of the TPT Claim remains disputed, unliquidated, and contingent. Further, counsel for the Crowes has represented that given the Court's MPSJ ruling, specifically the portion of the ruling regarding the scope of the trade secret claims, neither liquidation nor estimation of the TPT Claim is necessary for purposes of the pending confirmation hearing on the Plan.[5] (11/12/2020 Hearing Tr. 12:1-13:6).

### III. Legal Analysis & Conclusions of Law

Section 362(a)(1) stays the continuation of judicial actions and proceedings against a debtor that were commenced before the bankruptcy filing. However, pursuant to § 362(d)(1), the Court is required to grant relief from the stay "for cause." Because there is no clear definition as to what constitutes cause for purposes of § 362(d)(1), whether there is cause to grant relief from the stay is determined on a case-by-case basis. *In re Conejo Enterprises, Inc.*, 96 F.3d 346, 352 (9th Cir. 1996) (quoting *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990)).

///

///

---

[4] As discussed in more detail in this Ruling and Order, the Court notes that the status of the Louisiana Action, record in this case, and positions of the parties regarding the necessity of liquidating the TPT Claim prior to or as part of plan confirmation proceedings have changed significantly since the Abstention Ruling & Order was issued.

[5] A contested confirmation hearing on the Plan is scheduled to begin on March 30, 2021.

Courts generally consider the following non-exclusive *Curtis* factors when determining whether there is cause to grant stay relief to allow pre-petition litigation to continue in another forum:

> (1) Whether the relief will result in a partial or complete resolution of the issues.
> (2) The lack of any connection with or interference with the bankruptcy case.
> (3) Whether the foreign proceeding involves the debtor as a fiduciary.
> (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.
> (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.
> (6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.
> (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.
> (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).
> (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).
> (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.
> (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.
> (12) The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (internal citations omitted); *In re Kronemyer*, 405 B.R. 915, 921 (B.A.P. 9th Cir. 2009) (approving the *Curtis* factors as "appropriate, nonexclusive, factors to consider in deciding whether to grant relief from the automatic stay to allow pending litigation to continue in another forum").

Given TPT's representations to the Court that it is only seeking relief from the stay to liquidate the TPT Claim at this time, the Court's analysis and ruling will be limited to the claims for monetary damages pending against Crowe in the Louisiana Action.[6]

The Court now applies the non-exclusive *Curtis* factors to the record before it, which record reflects the current positions of the parties, given that such positions have changed since

---

[6] The Court notes that relief from the stay is not necessary for Crowe to pursue his claims for damages asserted in the Louisiana Action or any other proceeding.

the Motion for Stay Relief was initially briefed.

**1. Whether the relief will result in a partial or complete resolution of the issues**

In support of its position, TPT asserts that given that there are nine defendants in the Louisiana Action, stay relief will avoid piecemeal litigation and inconsistent results.

The Crowes submit that stay relief will not result in even partial resolution of the claims given that the ultimate allowance of a claim and determinations of dischargeability are solely within this Court's jurisdiction. The Crowes emphasize that TPT consented to the jurisdiction of this Court to liquidate its claim when it filed its proof of claim.

It is the determination of this Court that allowing the Louisiana Action to proceed will allow all, or nearly all, parties to the Louisiana Action to obtain complete determinations of all pending claims for monetary damages. This will allow liquidation of claims without the risk of inconsistent rulings as between the parties to the Louisiana Action. Whether or not TPT ultimately has any allowed claims, and the extent to which any such claims are dischargeable in this bankruptcy case are separate issues, reserved to the jurisdiction of this Court. This factor weighs in favor of stay relief.

**2. The lack of any connection with or interference with the bankruptcy case**

With respect to this factor, in the Motion for Stay Relief, TPT asserts that: (1) the Louisiana Action is not related to this bankruptcy proceeding; (2) this bankruptcy case is Crowe's attempt to thwart the Louisiana Action from proceeding; and (3) TPT's claims are not core claims and such claims will be most efficiently resolved in the Louisiana Action. During oral argument, TPT's counsel argued that allowing the Louisiana Action to proceed, for the purpose of liquidating the TPT claims, will not impede the administration of this case given that confirmation of the Plan is proceeding in March 2021.

The Crowes have asserted that the Louisiana Action is connected to this bankruptcy case and, if allowed to proceed, will directly interfere with the administration of the estate. Counsel for the Crowes has also raised concerns that TPT may try to use a ruling from the Louisiana Action to collaterally attack a confirmation order entered in this case. The Crowes have, however, conceded that the TPT Claim does not need to be liquidated or estimated prior to, or as part of,

the plan confirmation proceedings.

Upon consideration of the foregoing, it is the determination of this Court that the granting of stay relief for the purpose of allowing the Louisiana Action to continue solely to liquidate the monetary damages claims against Crowe will not materially interfere with this bankruptcy case. As set forth above, the Debtors have acknowledged that the TPT Claim does not need to be liquidated or estimated prior to or as part of the confirmation proceedings. Further, to the extent TPT were to attempt a collateral attack on a confirmation order in this case, the Court could deal with such matter in due course.[7] The issues of allowability and nondischargeability of TPT's Claim, if any, can be determined after liquidation of such claim. This factor weighs in favor of stay relief.

### 3. Whether the foreign proceeding involves the debtor as a fiduciary

In the Motion for Stay Relief, TPT asserts that pursuant to Crowe's employment agreement with Tucson Embedded Systems, Inc. ("TES"), Crowe owed duties of confidentiality to TES customers, including TPT.

The Crowes assert that they are not fiduciaries, and that, in any event, pursuant to § 523(a)(4), the assertion of Crowe acting in a fiduciary capacity would have to be tried before this Court in the Adversary.

The *Curtis* case drew this factor of the analysis from a House Report, which provides: "Generally, proceedings in which the debtor is a fiduciary . . . need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors." *In re Curtis*, 40 B.R. at 799-800 (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 343-44 (1977)). In this case, however, the complaint in the Louisiana Action asserts claims against Crowe "in his individual capacity and/or as an officer, owner, manager and/or partner" of various entities. Further, to the extent there are state law fiduciary claims against Crowe at issue in the Louisiana Action, any § 523(a)(4) dischargeability analysis, which analysis requires application of federal law, would have to be done by this Court. This factor is neutral.

---

[7] The Court also notes that confirmation orders may be revoked only under very limited circumstances. *See* 11 U.S.C. § 1144.

### 4. **Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases**

In the Motion for Stay Relief, TPT argues that the TPT Claim arises under Louisiana state law and that the Louisiana court has expertise in the application of Louisiana law, such that the Louisiana court is analogous to a specialized tribunal.

The Crowes counter that the Louisiana court is not a specialized tribunal for purposes of this analysis, and that state law claims like those in the Louisiana Action are routinely adjudicated by bankruptcy courts.

Ultimately, all of the causes of action TPT has asserted in the Louisiana Action are state law claims involving issues of Louisiana state law. The Louisiana court in which the case proceeds, whether that be a Louisiana state court or a Louisiana federal district court, is not a specialized tribunal, but will likely be familiar with the applicable law. Further, there is no need for this bankruptcy court, which is a specialized tribunal, to determine the issues of state law underlying the TPT Claim. This Court would retain jurisdiction over claim allowance and nondischargeability proceedings. This factor is neutral, at best.

### 5. **Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation**

TPT asserts that Crowe has refused to disclose or produce documents pertaining to his insurance policies in violation of certain orders issued in the context of the Louisiana Action, such that this factor should weigh in favor of stay relief.

The Crowes represent that they do not have an insurance carrier that will cover the costs of the Louisiana Action, which they argue militates against stay relief.

Even if the Crowes do not have insurance that will bear the costs of the Louisiana Action, this Court has approved the employment of special counsel, and pursuant to this Court's order, special counsel is engaged on a contingency fee basis, with fees to be calculated and earned, subject to this Court's approval, as a percentage of recovery from the claims brought by the Crowes. (Dkt. 99). The Crowes have indicated that their current special counsel is unwilling to

defend them in the Louisiana Action on a contingency basis. (Dkt. 333).[8] Thus, they argue that stay relief would force them to decide whether to "return to the fray" and proceed with litigation of their claims, presumably under the continued representation of current special counsel, or whether to locate new special counsel. It is ultimately the Crowes' decision as to whether to pursue the claims against TPT and others.[9] Further, the TPT Claim must be liquidated in some forum. Regardless of whether the TPT Claim is liquidated in the Louisiana court or this Court, the Crowes will necessarily incur fees and costs. This factor is neutral.

### 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question

TPT concedes in the Motion for Stay Relief that Crowe is not merely a bailee or conduit for the goods or proceeds in question, but TPT alleges that Crowe unlawfully acted as a conduit in providing TPT's proprietary technology to third parties, and TPT notes that there are eight third-party defendants to the Louisiana Action.

The Crowes argue that the allowance and liquidation of TPT's claims against Crowe are irrelevant to the other defendants because none of TPT's claims against Crowe in the Louisiana Action are dependent upon TPT's claims against other defendants to the Louisiana Action. The Crowes further suggest that this Court's determination of TPT's claims against the Crowes could reduce the amount of litigation required in the Louisiana Action as to the other defendants because the liability of those other defendants may depend on Crowe's liability.

Ultimately, none of the claims at issue appear to involve Crowe acting solely as a bailee or conduit. This factor weighs against stay relief.

### 7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties

In the Stay Relief Motion, TPT argues that allowing the litigation to proceed in the Louisiana court would not prejudice the interests of other creditors, the unsecured creditors'

---

[8] The ability of special counsel to limit the terms of its retention has yet to be determined by this Court.
[9] The Court notes that the Crowes' Disclosure Statement and Plan contemplate the Crowes pursuing this litigation against TPT as a source of repayment to creditors. (Dkt. 129 at 13; Dkt. 134 at 9, 14-16; Dkt. 349).

committee, or interested parties because TPT has asserted the largest claim in this case, is a member of the committee, and if successful in the Louisiana Action, will establish that the Crowes' Plan is not feasible, thus resolving this bankruptcy case. It is TPT's position that liquidation of the TPT Claim by this Court would be more time-consuming and would therefore prejudice creditors. TPT's position has changed since the filing of its motion, in that TPT acknowledges that confirmation of the Plan is proceeding in March 2021 and that its claim does not need to be liquidated prior to plan confirmation.

In the Response, the Crowes argue that stay relief would prejudice other creditors and interested parties who are not parties to the Louisiana Action, but are parties to this case, because those parties are able to monitor these bankruptcy proceedings and participate in this bankruptcy case as appropriate. The Crowes further argue that stay relief would double the litigation costs as they relate to the estate and delay the bankruptcy proceedings because if the underlying claims are adjudicated in the Louisiana court, the parties would still need to return to this Court for plan confirmation and dischargeability determinations. The Crowes now acknowledge that the TPT Claim does not need to be liquidated or estimated prior to plan confirmation.[10]

As an initial note, no creditors or other parties in interest have objected to the Motion for Stay Relief. Further, given the circumstances of this case and current status of the proceedings, it is the determination of this Court that allowing the Louisiana court to liquidate the TPT Claim would not prejudice creditors or interested parties in any material way. The TPT Claim will have to be liquidated at some juncture, in some forum, and the Court would require the parties to come back to this Court for any claim allowance, enforcement and/or dischargeability determinations. This factor weighs in favor of stay relief.

**8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c)**

Both parties agree this factor is inapplicable.

///

///

---

[10] The Crowes further assert that if confirmed, their Plan will result in a discharge of claims, except for those preserved in the Adversary, and thus prohibit any collateral attack on a confirmation order.

**9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f)**

Both parties agree this factor is inapplicable.

**10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties**

In the Motion for Stay Relief, TPT argues that it has conducted substantial discovery and is prepared for trial, such that if the Court were to deny its request for stay relief, TPT's litigation efforts over the course of several years would be for naught. TPT emphasizes that there are eight other parties to the Louisiana Action, and argues that dividing the claims liquidation litigation between this Court and the Louisiana court could result in disparate rulings and would require the expenditure of additional judicial resources. At oral argument, counsel for TPT emphasized that the Crowes have special counsel in the Louisiana Action who is employed on a contingency fee basis, such that it will be more economical for the matter to proceed in Louisiana.

The Crowes argue that these matters could be more expeditiously, efficiently, and cost-effectively determined by this Court than a Louisiana court. The Crowes further argue that stay relief would lead to duplicative litigation given that this Court has exclusive jurisdiction to determine the allowability and dischargeability of claims. With respect to the cost to the estate if the Court were to grant stay relief, the Crowes have indicated that their current special counsel is no longer willing to proceed on a contingency fee basis to defend against TPT's claims in the Louisiana Action. Given this, and given the complexity of the multi-party Louisiana Action, the Crowes argue that allowing the Louisiana Action to proceed as against Crowe would significantly increase the cost to the estate. The Crowes have also accused TPT of delaying resolution of its claims by this Court.

To the Court's knowledge, the Louisiana Action involves one additional debtor-defendant[11] and seven additional non-debtor defendants. As such, the Louisiana court alone is in a position to comprehensively resolve the disputes between most, if not all, of the parties. The

---

[11] Arizona Turbine Technology L.L.C. is a named defendant in the Louisiana Action and is a debtor in this District in case number 4:19-bk-15914-BMW.

Court's granting of stay relief would significantly curb duplicative litigation and further bifurcation of the issues. Further, at this juncture, the Crowes have special counsel who is employed to represent them on a contingency fee basis in the Louisiana Action. The Crowes have indicated that they may need new special counsel or need to seek approval of a non-contingent fee agreement for their current special counsel if they chose not to pursue their claims in the Louisiana Action. Even so, the Crowes' bankruptcy counsel in this case is employed on an hourly basis such that if liquidation of the TPT Claim were to be adjudicated by this Court, the Crowes would necessarily incur attorneys' fees. This factor favors stay relief.

**11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial**

In the Motion for Stay Relief, TPT represents that the parties are ready for trial in the Louisiana Action.

The Crowes assert that the Louisiana Action is not ready for trial, given that there is outstanding discovery and a new judge has been assigned to the case. The Crowes further note that TPT has waived its claim to a right to a jury trial and has consented to this Court's jurisdiction.

Based upon pleadings that have been filed on this Court's docket, the Louisiana record is voluminous. Although it has been represented to the Court that a new judge will be assigned to the case in Louisiana, the Louisiana Action has been pending for more than four years and is approaching the trial stage.[12] This factor weighs in favor of stay relief.

**12. The impact of the stay on the parties and the "balance of hurt"**

TPT argues that the balance of hurt will continue to fall on it if stay relief is denied. TPT alleges that Crowe has been attempting to circumvent adjudication of TPT's claims for years, and that stay relief would allow the parties to avail themselves of the most direct mechanism by which to adjudicate TPT's claims. TPT also notes that in the Disclosure Statement, the Crowes

---

[12] Based upon the representations of counsel for TPT, a trial was set to begin in November 2020, but was vacated due to a removal action and will need to be reset. (Adv. Dkt. 164). Although counsel for the Crowes has argued that the case is not ready for trial in Louisiana, no party has disputed that a trial was scheduled to begin in November 2020.

disclose their intent to pursue their claims in the Louisiana Action, such that allowing the Louisiana Action to resume would expedite the continuation of the litigation and avoid the possibility of inconsistent outcomes and piecemeal litigation. TPT asserts that requiring it to pursue its claims in the Louisiana Action in two forums would be overly burdensome. During oral arguments, counsel for TPT also noted the burden to third-party witnesses if stay relief is not granted.

The Crowes argue that the impact of denying stay relief to TPT would not be outweighed by the impact of granting stay relief on them and the estate. The Crowes assert that TPT has already litigated two lawsuits in Arizona related to the same nucleus of facts, and that based upon TPT's own admissions, the claims before this Court are core proceedings that are inextricably intertwined with the claims pending in the Louisiana Action. The Crowes argue that TPT will not be significantly prejudiced by litigating in this forum and will not have wasted a significant effort in developing its case in Louisiana given that there are numerous other defendants to the Louisiana Action, which defendants TPT can proceed against in Louisiana. The Crowes argue that TPT will ultimately have to litigate in both Louisiana and this Court given that there are claims against third parties in the Louisiana Action and core matters that will have to be determined by this Court. The Crowes emphasize that they were required to file their bankruptcy case in Arizona, and that TPT has submitted itself to this Court's jurisdiction.

The stay is intended in part to provide debtors with breathing room. In this case, the Crowes have had the benefit of the stay for more than 22 months. Confirmation of the Crowe's Plan is set for an evidentiary hearing, and, importantly, counsel for the Crowes has confirmed that liquidation of the TPT Claim is not essential for plan confirmation. Ultimately, the stay is merely pausing litigation that will necessarily have to be resolved in some forum. Based upon the foregoing, this factor weighs in favor of stay relief.

**IV. Conclusion**

Based upon the Court's consideration of the *Curtis* factors and the totality of the circumstances in this case, it is the determination of this Court that TPT has established cause for relief from the automatic stay pursuant to § 362(d)(1) to allow the Louisiana Action to proceed

against Crowe, solely for the purpose of liquidating the pre-petition TPT Claim. The stay will remain in effect as to any injunctive relief sought in the Louisiana Action.

Wherefore, based upon the foregoing, upon consideration of the entire record before the Court, and for good cause shown;

**IT IS HEREBY ORDERED** granting TPT limited relief from the stay for the sole purpose of liquidating the pre-petition TPT Claim in the Louisiana Action.

**IT IS FURTHER ORDERED** denying TPT stay relief to pursue any injunctive relief against Crowe in the Louisiana Action. This denial is without prejudice to TPT seeking further relief from this Court subsequent to liquidation of the TPT Claim.

**IT IS FURTHER ORDERED** that TPT must return to this Court for purposes of any and all enforcement, claim allowance, and/or dischargeability determinations.

**DATED AND SIGNED ABOVE.**

Notice to be sent through the
Bankruptcy Noticing Center ("BNC")
to the following:

David K. Crowe
Colleen M. Crowe
3650 W Camino Christy
Tucson, AZ 85742

Notice of Electronic Filing to be sent via email,
through the CM/ECF System, to ALL registered users, including:

Frederick J. Petersen
Isaac D. Rothschild
Mesch, Clark & Rothschild, P.C.
*Counsel for Debtors*

Adam B. Nach
Helen K. Santilli
Lane & Nach, P.C.
*Local Counsel for Turbine Powered Technology, LLC ("TPT")*

| | |
|---|---|
| 1 | Kevin P. Merchant<br>Cliff A. LaCour |
| 2 | Robert E. Torian |
| 3 | NeunerPate<br>*Pro Hac Vice for Turbine Powered Technology, LLC ("TPT")* |
| 4 | |
| 5 | Todd Jackson<br>Jackson & Odon, PC |
| 6 | *Co-Counsel for Tucson Embedded Systems, Inc.* |
| 7 | Kasey C. Nye |
| 8 | Waterfall Economidis Caldwell, et al.<br>*Co-Counsel for Tucson Embedded Systems, Inc.* |
| 9 | |
| 10 | Bradley J. Stevens<br>Joel F. Newell |
| 11 | Jennings, Strouss & Salmon, P.L.C.<br>*Counsel for Official Committee of Unsecured Creditors* |
| 12 | |
| 13 | Edward K. Bernatavicius<br>Office of the U.S. Trustee |
| 14 | *Counsel for the U.S. Trustee* |